UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MITCHELL EATON,

    Defendant.
                                   /

File No. 1:13-CR-55

HON. ROBERT HOLMES BELL

## **O P I N I O N**

On March 5, 2013, Defendant Mitchell Eaton was indicted on six child pornography counts. (Dkt. No. 1.) On April 29, 2013, Defendant filed a motion to suppress statements he made to two Homeland Security Investigations (HSI) officers on February 22, 2012, in his bedroom at his home. (Dkt. No. 24.) Defendant argues that his statements must be suppressed because (1) they were obtained in violation of his *Miranda* rights and/or (2) they constituted a coerced, involuntary confession. This Court held an evidentiary hearing and took testimony from Agent Linda Fraser on June 19, 2013 (Dkt. No. 31), and now denies the motion.

**I.**

On February 21, 2012, a federal magistrate judge authorized a warrant to search and seize the contents of the email account forfacebookonly16@yahoo.com, which had received graphic pornographic images of children. HSI agents traced the user of the email account

to the Eaton family's home in Leslie, Michigan. At 8:00 a.m. on February 22, 2012, three HSI officers, Special Agents Lisa Fraser, Dan Gwyn, and Timothy Kruithoff, knocked on the door of the home, which was opened by Defendant's father. After a brief conversation, Defendant's father left the agents outside while he briefly talked to Defendant, who was 18 years old at the time and living in the home. When Defendant's father returned, he allowed the agents into the home.

The agents first interviewed Mr. Eaton privately in Defendant's bedroom. Two agents then privately interviewed Defendant in the same room. During this interview, Defendant confessed to owning the email account in question and to storing, sending, and receiving child pornography through that account and another email account. Following Defendant's admission to owning the forfacebookonly16 account, the agents showed Defendant images of child pornography from the account and asked him to identify those images he had previously seen. Following this interview, Defendant's mother was interviewed in the same room.

In November 2012, Defendant agreed to meet with the agents again and answer follow-up questions. At this time, Defendant admitted to using two additional email accounts to store and trade child pornography. The motion to suppress does not challenge the voluntariness of these statements.

**II.**

**A. *Miranda* Violation**

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkeme v. McCarty*, 468 U.S. 420, 428 (1984).

There is no dispute that Defendant was interrogated by the HSI agents. Thus, the only question is whether Defendant was in custody during that interrogation. "[I]n order for *Miranda* to apply, the suspect must either be actually taken into custody or the restraint on his freedom must rise to the level associated with a formal arrest." *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). The mere fact that questioning takes place in a "coercive environment" is insufficient to constitute custody:

> [A] noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question.

*Oregon v. Mathiason*, 429 U.S. 492, 495 (1977); *see also United States v. Phillip*, 948 F.2d 241, 247 (6th Cir. 1991) ("Coercive environments not rising to the level of formal arrest or restraint on freedom of movement do not constitute custody within the meaning of *Miranda*.").

"Two discrete inquiries are essential to the [in custody] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The Sixth Circuit has identified particular circumstances which guide this analysis: "the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told she need not answer the questions." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (citing *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)).[1] *Panak* held that an interrogation which

---

[1] Defendant's briefing proffers the factors listed in *United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998), instead of the *Panak* factors. However, *Panak* is the more recent binding Sixth Circuit decision. The factors provided for consideration in both cases are substantially similar. One minor difference is that *Salvo* includes "the purpose of the questioning" as a factor, *Id.* at 950, and Defendant harps on the fact that the agents desired a confession. However, the fact that the agents were at the house to investigate a crime, gather evidence, and possibly garner a confession does *not* make the interview custodial. *See Mathiason*, 429 U.S. at 495 ("Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question.") Moreover, in *Salvo*, the same scenario was present, where an agent confronted the defendant with evidence of his crime during
(continued...)

took place in the defendant's home and lasted between 45 minutes and one hour, and in which the defendant was unrestrained but never told she did not need to answer questions, was non-custodial. Because of the striking similarities of this case to *Panak*, the Court finds that *Panak* is controlling and that the interrogation of Defendant was non-custodial.

### 1. *Panak* Factors

The interrogation of Defendant took place in his bedroom, which is a familiar and non-isolated setting. As *Panak* explained, the home "is the one place where individuals will feel most unrestrained in deciding whether to permit strangers into the house, in moving about once the police are there, in speaking as little or as much as they want, in curbing the scope of the interview or in simply asking the officers to leave." *Panak*, 552 F.3d at 465-66. "While an interrogation in one's home is not determinative alone of the custodial inquiry, it is usually indicative of the absence of the isolation inherent in custodial interrogations." *Coomer v. Yukins*, 533 F.3d 477, 486 (6th Cir. 2008). While this case differs from *Panak* in that Defendant himself did not invite the agents into the home, this is not a material difference because Defendant's father talked to him before inviting the agents into the home, meaning that Defendant was aware of why the officers were there and how they entered the house. Thus, as in *Panak*, this factor favors a non-custody finding.

Second, the interview either lasted between 45 and 60 minutes, as Agent Fraser

---

[1](...continued)
an interview conducted as part of an investigation, and the Sixth Circuit reversed the district court's finding of custody. 133 F.3d at 952-53.

testified, or 60 and 90 minutes, as indicated in Defendant's brief. In either case, the length of Defendant's interview favors a finding of non-custody. *See Panak*, 552 F.3d at 467 (finding that an interview lasting between 45 minutes and one hour "compares favorably" to other encounters the Sixth Circuit had previously deemed non-custodial) (citing *United States v. Crossley*, 224 F.3d 847, 862 (6th Cir. 2000) (concerning an interview lasting less than one hour); *United States v. Mahan* 190 F.3d 416, 422 (6th Cir. 1999) (concerning an interview lasting 90 minutes)).

Next, as explained in the parties' briefs and testified to by Agent Fraser, Defendant was not hand-cuffed and was explicitly told that he would not be hand-cuffed or arrested. (Dkt. No. 25, at PageID# 116-117; Dkt. No. 27, at PageID# 131.) While the agents may have sat between Defendant and a closed door in a small room that may or may not have had a window, there is no indication that the door was locked, that the agents ever acted to prevent Defendant from leaving, or that the agents ever told Defendant that he could not leave. Additionally, Defendant's parents were in the living room right outside the door. As Agent Fraser testified, the agents used a conversational and polite tone at all times while in the house and conducting the interview of Defendant.[2] These circumstances are substantially

---

[2]Defendant's brief "quotes" the agents as telling Defendant "we get angry when you hide evidence." (Dkt. No. 25, at PageID# 117.) However, Agent Fraser testified that she did not recollect any agent saying anything similar to this quote in tone or content. Instead, Agent Fraser recalls advising Defendant that lying to a federal agent is a crime. Without any competing testimony, the Court credits Agent Fraser's recollection of the interview, and notes that politely notifying Defendant of the importance of telling the truth does not suggest that Defendant's freedom of movement was restrained.

similar to those in *Panak* which the Sixth Circuit found to establish unrestrained freedom of movement:

> During the interview, the officers did not handcuff Panak or physically restrain her, and they did not otherwise limit her freedom of movement. *See Swanson*, 341 F.3d at 530; *Crossley*, 224 F.3d at 862; *Salvo*, 133 F.3d at 951. She was never told that she could not leave, that she could not ask the investigators to leave or that she was required to answer their questions. Nobody raised his voice, the investigators did not possess, much less brandish, firearms or handcuffs . . . .

*Panak*, 552 F.3d at 467.[3] Again, there is one difference from *Panak*: the agents were carrying firearms. However, once again the Court finds this difference immaterial. It is unclear whether these firearms were visible; no one testified that they were visible and Agent Fraser testified that she oftentimes wears a jacket to such interviews to obscure her firearm. More importantly, there is no allegation that an agent ever brandished, touched, or drew attention to the presence of the firearms.

Agent Fraser also testified that Defendant voluntarily requested to meet with the

---

[3]Defendant's citations to *United States v. Mahar*, 801 F.2d 1477, 1499 (6th Cir. 1986) and *United States v. Lee*, 699 F.2d 466, 468 (9th Cir. 1982), to argue to the contrary are unavailing. In *Mahar*, the officers aimed guns at the defendant's face, slapped the defendant in the head, and forced him to stand against a wall with his hands raised for twenty minutes, before he was taken away for questioning. 801 F.2d at 1499-1500. No such violence was present in this case. *Lee* is also distinguishable because not only is it a non-binding Ninth Circuit opinion but it also involved a defendant being questioned in a closed FBI sedan. 699 F.2d at 468. At the motion to suppress hearing, Defendant also requested the Court look at *United States v. Craighead*, which found a similar in-home, private interview to be custodial. *See* 539 F.3d 1073, 1083 (9th Cir. 2008) ("To be 'free' to leave is a hollow right if the one place the suspect cannot go is his own home."). While this decision, unlike the previous two, supports Defendant's position, the Court declines to follow a Ninth Circuit decision which contradicts an on-point, binding Sixth Circuit precedent.

7

agents to talk again in November. This fact further supports the Court's finding that Defendant possessed unrestrained freedom of movement during the February interview. *Panak* found that the fact that "one of the investigators called Panak several months later with some follow-up questions" and the fact that "Panak answered the questions and does not complain about this follow-up interview" to be "[c]onsistent with the non-threatening and cooperative nature of th[e] [initial] interview." *Id.* at 467.

Unlike the other three factors, the fourth factor does point toward a finding of custody: the agents did not tell Defendant that he did not need to answer their questions. However, the same scenario, where only the fourth factor pointed toward custody, played out in *Panak*, and the Sixth Circuit held there that "the existence of such advice is one factor among many, and we have never held that it is a necessary condition . . . before officers may question an individual in a non-custodial setting." *Id.* at 467. Consequently, the Sixth Circuit concluded in *Panak* that, despite the absence of such advice, all of the circumstances considered together indicated that a reasonable person in Panak's situation would have felt free to terminate the interview. *Id.* at 468. Similarly, the totality of circumstances in this case indicate that the interview "retained a non-custodial hue throughout," *Panak*, 552 F.3d att 466, and that a reasonable person in Defendant's position would have felt free to terminate the interview.

### 2. Irrelevant Arguments

Defendant makes numerous other arguments which have no bearing on the custody

analysis. First, Defendant posits his subjective belief that he could not terminate the interview and his belief that the agents had a warrant. These beliefs are irrelevant to whether a *reasonable* person would believe he was not free to terminate the interview, which is an objective standard. Next, Defendant posits his age and the fact that he was home-schooled as relevant circumstances. While the Supreme Court has held that children are more susceptible to submitting to police questioning, *J.D.B. v. North Carolina*, 131 S.Ct. 2394, 2402-03 (2011), Defendant was not a child; he was eighteen at the time of the questioning. Third, Defendant alleges in his briefing that the agents promised him leniency because of his age if he confessed. However, Agent Fraser testified unequivocally that no agent ever made a promise of leniency. The Court credits this uncontradicted testimony. Last, Defendant suggests that the fact that the agents showed Defendant evidence of his guilt supports a finding of custody. However, that would only be true if the presentation of such evidence would make a reasonable person feel that he was not free to leave:

> It is well-settled that in order to impact upon the custody determination, the communication of [agents'] statements must somehow relate to the suspect's freedom of action. . . . While the agents' statements made it clear that Salvo was the target of a criminal investigation, Salvo's freedom of action, during and after the interview, mitigated against the possibility he would feel "in custody."

> The same analysis applies with equal force to the second interview in which Agent Williamson showed Salvo the pictures seized from his computer and told Salvo that "the Assistant U.S. Attorney would be prosecuting the case" and that "things were such that maybe he should get a lawyer to have that person talk with the Assistant U.S. Attorney." Although the information imparted to Salvo in this interview made it clear that the Government would prosecute, Agent Williamson's statements to Salvo at the beginning of the

9

interview—that he was not under arrest, that he was free to leave at the end of the interviews, and would not be placed under arrest at the conclusion of the interview—mitigated against any possibility that the statements pertaining to future prosecution could lead a reasonable person to feel as though he was in custody at that time.

*Salvo*, 133 F.3d at 952-53. Defendant was questioned in his bedroom and told that he was not under arrest and would not be placed in handcuffs. Under those circumstances, the fact that the agents showed Defendant evidence of his guilt (notably after he admitted to owning the email account in question) does not make the interview custodial.

In conclusion, under the present circumstances, a reasonable person would have felt he or she was free to terminate the interrogation and leave. Because Defendant was not in custody, *Miranda* warnings were not required.

**B. Involuntary Confession**

"In determining whether a confession has been elicited by means that are unconstitutional, this court looks to the totality of the circumstances concerning whether a defendant's will was overborne in a particular case." *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003) (quoting *Mahan*, 190 F.3d at 422). The totality of the circumstances includes "the age of the accused, his level of education and intelligence, his physical condition and emotional state at the time of the confession, his expressed fears of violent reprisals, actual physical punishment, the proximity of the coerciveness of the confession as given, and the inherent coerciveness of the confession as given." *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992) (citing *United States v. Murphy*, 763 F.2d 202, 205 (6th Cir.

1985)). "When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary." *Mahan*, 190 F.3d at 422. The Sixth Circuit has established three requirements for a finding that a confession was involuntary due to police coercion: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *Id.*

"[A] statement about possible leniency upon cooperation is not generally impermissible." *United States v. Wiley*, 132 F. App'x 635, 640 (6th Cir. 2005) (citing *Williams v. Withrow*, 944 F.2d 284, 289 (6th Cir. 1991)). In general, promises of leniency are coercive only "if they are broken or illusory." *Johnson*, 351 F.3d at 262 n.1. Similarly, "'speculation that cooperation will have a positive effect' do[es] not make subsequent statements involuntary." *United States v. Delaney*, 443 F. App'x 122, 129 (6th Cir. 2011) (quoting *Wiley*, 132 F. App'x at 640).

Defendant argues that his confession was coerced because (a) the agents made a threat – "We get angry when you hide evidence", and (b) the agents made promises of leniency by indicating that if he confessed the government would go easy on him due to his age. Agent Fraser's uncontradicted testimony, which has been accepted by this Court, was that the agents never made a threat and never promised leniency. To the extent Defendant is also arguing that the agents' admonition that it was important to tell the truth constitutes coercion, the

Court disagrees. Advising an interview subject of the legal ramifications of lying is not objectively coercive. *See Mahan*, 190 F.3d at 422-23 ("Mahan alleges that Agent Walsh coerced him into admitting his role in the crime by telling him that he could get into serious trouble for providing false information and that his story was unbelievable. We disagree.") *United States v. Brinson*, 85-5308, 1986 WL 16715, at *2 (6th Cir. Mar. 4, 1986) (per curiam) ("[E]ncouraging her to tell the truth is no more than affording her the chance to make an informed decision with respect to her cooperation with the government.") (quoting *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978)).

In light of Agent Fraser's uncontradicted testimony and the lack of any evidence of coercion proffered by Defendant, the Court finds that the government has met its burden of proving by a preponderance of the evidence that Defendant's confession was voluntary. *See Mahan*, 190 F.3d at 422.

Accordingly, the motion to suppress will be denied in its entirety. An order consistent with this opinion will be entered.


Dated: June 24, 2013　　　　　　　　　　　　　　　/s/ Robert Holmes Bell
　　　　　　　　　　　　　　　　　　　　　　　　ROBERT HOLMES BELL
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE